IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Wiley Y. Daniel**

Civil Action No.  05-cv-01296-WYD-MJW

PUEBLO COUNTRY CLUB,

    Plaintiff(s),

v.

AXA CORPORATE SOLUTIONS INSURANCE COMPANY, f/k/a GLOBAL RISKS US INSURANCE COMPANY,

    Defendant(s).

---

**ORDER**

---

I.    INTRODUCTION AND BACKGROUND

THIS MATTER is before the on Court Defendant AXA Corporate Solutions Insurance Company's Motion to Certify Questions of Law to the Colorado Supreme Court or, in the Alternative, to Certify for Appeal the Court's Denial of AXA's Motion for Summary Judgment, filed April 20, 2007 (docket #76).

By way of background, I note that this is a breach of contract and bad faith insurance case arising out of AXA's alleged failure to settle a lawsuit within policy limits.  During all times relevant, Plaintiff Pueblo Country Club ("PCC") was insured by Defendant AXA Corporate Solutions Insurance Company ("AXA") under a Directors and Officers Liability Including Organization Reimbursement Policy (the "Policy").  The policy provided a $1,000,000 liability limit in the aggregate, and covered "damages, settlements, and Costs, Charges and Expenses," but did not cover "punitive or

exemplary damages." Policy at 1 Item C, 14 § II.F.  On January 11, 2000, Arcenio Garcia filed a lawsuit against PCC alleging that PCC unlawfully terminated him from his position as a golf course Grounds Maintenance Superintendent based on his race, national origin and age (the "Garcia Suit").  Garcia asserted claims under 42 U.S.C. § 1981 and 29 U.S.C. § 621 (the Age Discrimination in Employment Act, hereafter "ADEA") and sought to recover compensatory and punitive damages.

The case proceeded to trial and on November 26, 2003, the jury returned a verdict in favor of Garcia on his Age Discrimination Claim, and awarded Garcia compensatory damages in the amount of $417,923, consisting of $256,362 in lost back-pay and $161,561 in lost front pay.  In addition, the Jury found that "defendant Pueblo Country Club's conduct in connection with plaintiff's termination was willful."  In the Judgment, the district court awarded Garcia "liquidated damages"under the ADEA in the amount of $256,362, ordered that PCC pay Garcia a "tax enhancement award" in the amount of $167,781, and awarded Garcia attorney's fees in the amount of $672,000.  The final judgment entered against PCC equaled $1,514,066, not including pre or post-judgment interest and costs.

Following the district court's entry of final judgment, PCC and Garcia entered into a settlement agreement under which PCC agreed to pay $1,500,00 in satisfaction of the judgment.  By the time the parties negotiated the settlement agreement, AXA had advanced PCC a total of $313,811.65 in defense costs.  To effectuate settlement, AXA contributed the remaining $686,188.35 of the Policy's liability limit towards the settlement and PCC paid the remaining $813,811.65.

In the instant case, PCC brings claims against AXA for breach of contract and bad faith breach of contract based on allegations that AXA refused numerous requests by PCC to settle the Garcia Suit within the Policy's limits, controlled defense of the Garcia Suit in a manner that prevented settlement and caused defense costs to be spent, failed to offer its Policy limits to settle the case prior to judgment, and placed its interest above the interests of its insured.  AXA asserted a counterclaim against PCC to recover monies paid to settle the Garcia Suit on PCC's behalf because, "under Colorado public policy, PCC is not entitled to insurance coverage for damages caused by its intentional or willful wrongful conduct."

AXA filed a motion for summary judgment in this case, asserting that it was entitled to summary judgment on Plaintiff's claims for breach of contract and bad faith, and on its counterclaim for reimbursement because "under Colorado public policy, PCC cannot obtain insurance for coverage for loss caused by PCC's own intentional age discrimination against Garcia."

In its motion for summary judgment, AXA acknowledged the absence of Colorado authority to support its public policy argument, but asserted that courts in other States have held that the public policy of those states prohibits insurance coverage for intentional discrimination.  I declined AXA's invitation to expand Colorado's general public policy against coverage for intentional or wrongful acts to void coverage for the age discrimination claim asserted against PCC in the Garcia Suit, found that it was unlikely that the Colorado Supreme Court would expand its public policy to prohibit insurance coverage for civil rights violations, and concluded that

Colorado's public policy does not bar coverage in this case. I further found that AXA waived its right to assert a counter-claim for reimbursement in this case, and denied its motion for summary judgment on its counter-claim. Finally, I found that numerous material facts are in dispute concerning whether AXA's conduct with regard to settlement of the Garcia Suit was reasonable, and rejected AXA's contention that it is entitled partial summary judgment in its favor on what it characterizes as "PCC's claim to recover the amount of liquidated damages awarded to Garcia."

II.     ANALYSIS

Following denial of its motion for summary judgment, AXA moves this Court to certify several questions to the Colorado Supreme Court pursuant to Colorado Appellate Rule 21.1 or, in the alternative, certify denial of its motion for summary judgment for appeal to the Tenth Circuit.

    A.     Certification to the Colorado Supreme Court

AXA seeks certification of the following four questions to the Colorado Supreme Court:

> (1) Does Colorado public policy, which forbids insurance coverage for "damages    resulting from intentional or willful wrongful acts," preclude insurance coverage for damages caused by an employer's "intentional[] and purposeful[]" age discrimination against an employee?
>
> (2) If so, can an insurer waive objections based on the aforementioned public policy by contributing money towards the settlement of an age-discrimination lawsuit, notwithstanding Colorado law holding that a party may not waive objections based on public policy?
>
> (3) Does a settlement demand trigger an insurer's duty to settle when the amount demanded exceeds the available

>limit of liability under the policy, after subtracting the amount demanded by the insured for reimbursement of defense costs?
>
>(4) To succeed on a bad faith claim, must an insured prove that the insurer knew of or recklessly disregarded the alleged unreasonableness of its conduct, when the insurer has not retained any contractual right or duty to control the insured's defense, or must the insured merely prove that the insurer's conduct was negligent?

Colorado Appellate Rule 21.1 provided that the Colorado Supreme Court may answer questions of law certified to it by a United States District Court "when requested by the certifying court, if there is involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the Supreme Court." AXA states in its motion that the issues raised in this case are "of major importance to the citizens and bar of Colorado, involving critical issues of public policy." However, I note, that it was AXA who removed these proceedings from Denver District Court on July 12, 2005, and affirmatively sought to have this matter decided in this Court. Only now that it has received unfavorable rulings on the issues raised in its motion for summary judgment does AXA seek to re-litigate these same issues before the Colorado Supreme Court. Trial in this case is set to commence July 23, 2007. I find that Certification to the Colorado Supreme Court at this late stage in the proceedings will result in delay, increased costs, and needless consumption of additional judicial resources. Therefore, I decline to certify the proposed questions as requested by AXA.

B.    <u>Certification for Immediate Appeal</u>

In the alternative, AXA requests that I certify the question of whether Colorado public policy precludes insurance coverage for damages caused by an employer's intentional and purposeful age discrimination against an employee to the Tenth Circuit for immediate appeal. The relevant statute, 28 U.S.C. §1292(b), provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

The statute imposes four criteria to be met before an issue may certified for appeal: (1) the action must be a "civil action," (2) the court must conclude that the order from which the appeal is to be taken involves a "controlling question of law;" (3) upon which there exists "substantial ground for difference of opinion," and (4) the court must believe that "immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Grand Jury Proceedings June 1991*, 767 F.Supp. 222, 223 (D. Colo. 1991). A question of law is "controlling" if it has the potential for substantially accelerating disposition of the litigation. In other words, "[i]f the correct answer to the question will end the matter pending, the question is controlling." *In re Grand Jury Proceedings June 1991*, 767 F.Supp. at 225. As to the third requirement,

the question presented for certification must be difficult, novel, and involve "a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions." *Id.* at 226.

This is a civil action, therefore, the first criteria is met. However, Defendant has failed to demonstrate that the issues it seeks to have this Court certify involve controlling questions of law, or that immediate appeal from the order may materially advance the ultimate termination of the litigation. Generally, an order denying a motion for summary judgment on the grounds that there are unresolved issues of fact is not appropriate for immediate appeal pursuant to § 1292(b). *Meyer v. Stern*, 599 F.Supp. 295, 297 (D. Colo. 1984). In addition, resolution of whether a Colorado state public policy exception would bar coverage in this case would not materially advance the termination of this litigation, because there remain issues of fact concerning whether AXA waived its right to assert this public policy argument in the first instance. Therefore, AXA is not entitled to certification of these issues for immediate appeal.

Finally, PCC has requested that I award it legal fees incurred in preparing its response to AXA's motion to certify pursuant to Fed. R. Civ. P. 11. Rule 11(b) requires that a pleading be, "to the best of the signer's knowledge, well grounded in fact, warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interpose for any improper purpose." *Coffey v. Healthtrust, Inc.*, 1 F.3d 1101, 1104 (10th Cir. 1993). While I deny the relief requested by AXA in its motion to certify, I decline to find that the motion is so frivolous as to warrant imposition of attorneys' fees under Rule 11.

III.     CONCLUSION

In conclusion, for the reasons set forth above, it is hereby

ORDERED that Defendant's Motion to Certify Questions of Law to the Colorado Supreme Court or, in the Alternative, to Certify for Appeal the Court's Denial of AXA's Motion for Summary Judgment, filed April 20, 2007 (docket #76) is **DENIED**.

Dated:  May 31, 2007

                                        BY THE COURT:


                                        s/ Wiley Y. Daniel
                                        Wiley Y. Daniel
                                        U. S. District Judge